## Case No. 1,297.

### The BENEFACTOR.

[8 Ben. 426.][1]

District Court, E. D. New York. May, 1876.[2]

COLLISION AT SEA — STEAMER AND SCHOONER — CHOICE OF DANGEROUS COURSE—CHANGE IN EXTREMIS.

1. A steamer and a schooner came in collision in broad daylight in the Atlantic ocean, off Squam beach. The schooner was bound up the coast, close-hauled on the port tack, heading about north by west and running about eight miles an hour. The steamer was running down the coast about ten miles an hour. Each vessel sighted the other several miles off. The steamer claimed that she had shaped her course to

¹ [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

² [Affirmed by the circuit court in Case No. 1,298, and that decree was affirmed in The Benefactor, 102 U. S. 214.]

pass inshore of the schooner and would have passed her in safety, if the schooner had not, when the vessels were a short distance apart, luffed up across her bow. It appeared that she would have passed not more than thirty or forty feet off. The steamer struck the schooner on her starboard quarter, and she sank in about five minutes and was a total loss with her cargo: *Held*, that it was doubtful whether *the schooner did attempt to luff, but if she did, it was only a change in extremis.

2. That the cause of the collision was the fault of the steamer in endeavoring to pass ahead of the schooner, and so close to her. Having made choice of so dangerous a mode of passing, it made no difference whether she misjudged, by so slight a distance, or whether the schooner, by a like misjudgment, thought the steamer was not going to clear her, and, at the last minute, luffed.

[Cited in The Beta, 40 Fed. 900.]

3. That the steamer was liable for the damages.

[In admiralty. Libel in rem by the owners of the schooner Susan Wright against the steamship Benefactor (the New York & Wilmington Steamship Company, claimants) for collision. A separate libel was filed by the crew of the schooner for the loss of personal effects, and a petition of intervention by the owners of the schooner's cargo to recover value of the same. Decree for libellants and interveners, the damages in the aggregate being assessed at $61,810.49.

[Subsequently an appeal was taken to the circuit court, where this decree was affirmed, (Case No. 1,298,) and on appeal to the supreme court the judgment of the circuit court was affirmed, (The Benefactor, 102 U. S. 214.) For proceedings on the part of the claimants to limit their liability pursuant to Rev. St. § 4283, and the Fifty-fourth admiralty rule, see Case No. 10,200, 103 U. S. 239, 247.]

On February 26th, 1875, a collision occurred about two miles off Squam beach, on the New Jersey coast, between the steamship Benefactor and the schooner Susan Wright, whereby the latter with her cargo was lost. The owners of the vessel and of the cargo filed separate libels to recover the damages, which libels were consolidated by order of the court. The collision took place about ten o'clock in the morning. The schooner was coming up the coast, heading about north by west, close-hauled on her port tack, and the steamer was going down the coast, intending to pass inside of the schooner, their courses crossing at a slight angle. The schooner was struck on the starboard quarter by the steamer and sank in about five minutes.

R. D. Benedict, C. A. Tweed, and Beebe, Wilcox & Hobbs, for libellants.

Owen & Gray, for claimants.

BENEDICT, District Judge. These are actions to recover of the steamship Benefactor the sum of $145,113.00 for the loss of the schooner Susan Wright and her cargo, lost in a collision which occurred between these two vessels on the 26th of February, 1875. The place of the collision was off Squam beach, about two miles off shore. The time of the collision was about ten o'clock in the morning. The weather was fine and clear. There were no vessels near to interfere with the navigation. The steamer was bound outward from New York, running some ten knots an hour, and the schooner was bound to New York, running eight knots, close-hauled upon the wind, which was west to west-north-west. Each vessel was seen by the other at the distance of some miles, and there was nothing to prevent their passing each other in safety. They came together without slackening their speed—and the schooner sank almost immediately with her valuable cargo.

On the part of the steamer, it is charged that the steamer saw the schooner approaching her course and ported her helm to pass inshore of her; that the schooner then also ported and the vessels upon these courses would have passed each other in safety, but that, as the vessels neared each other, the schooner suddenly luffed across the bows of the steamer, whereupon the steamer bore away at once, let go her spanker and stopped her engine, but had not time to avoid the schooner.

Upon the evidence there is great room to doubt whether an effort was made to luff the schooner, as is charged by the steamer. If such an effort was made, it was at the last moment, and when little or no change in the course of the schooner could have been effected, and it was in extremis.

The fault causing the collision was the fault of the steamer in attempting to pass ahead of the schooner and so close to her. When the vessels neared each other, the course of the steamer, as the pilot on the schooner, who is called as a witness by the steamer, judges, would have carried her from 30 to 40 feet clear of the schooner. There was no necessity for thus "shaving" the schooner, and it was highly improper so to do. The steamer having chosen such a dangerous course, it matters not whether she misjudged her ability by forty feet and so ran into the schooner, or whether the schooner, by reason of a similar misjudgment, was led to suppose that the steamer could not clear her, and, at the last moment, luffed.

A steamer has no right under circumstances like these needlessly to place herself in such close proximity to a sailing vessel that the error of a moment will bring destruction. There must be a decree for the libellants, with an order of reference to ascertain the amount of the loss.