# THE BETA.

## THE BELLE HOOPER.

### GILKEY *et al.* *v.* THE BETA.

### PICKFORD *v.* THE BELLE HOOPER.

(*District Court, S. D. New York.* December 30, 1889.)

COLLISION—BETWEEN STEAM AND SAIL—CROSSING COURSE—LOOKOUT—YAWING.
  The steamer B. and the schooner B. H. were going on nearly opposite courses off Hatteras, and collided; the steamer striking the schooner on the starboard side at an angle of about 45 deg. On a conflict of evidence, *held*, that the steamer crossed the schooner's course from port to starboard, when, seeing both of the latter's lights, she ported, and then steadied before getting sufficiently to starboard to allow for the schooner's ordinary yawing; and that she did not early enough observe the schooner, and take means to keep out of the way; and that the steamer was alone in fault.

·In Admiralty. Cross-libels for collision.
*Wing, Shoudy & Putnam* and *Mr. Burlingham,* for the Beta.
*Owen, Gray & Sturgis,* for the Belle Hooper.

BROWN, J. The above cross-libels grow out of a collision between the steam-ship Beta and the schooner Belle Hooper off Hatteras on March 26, 1889, whereby the schooner was so damaged that she sank on reaching Hampton Roads. The vessels were sailing on nearly opposite courses,—the steamer, on a course N. by E. ½ E., at the rate of about nine knots per hour; the schooner, S. S. W., at the rate of about three knots. The collision occurred a little after 7 o'clock in the evening, the steamer's stem striking the schooner on the starboard side near the fore rigging, at an angle of about 45 deg. The wind was light from the N. E., the sea calm, and the weather a little hazy; but lights could be seen at a good distance. The evidence shows that when the vessels first came in view of each other's lights they were nearly end on, varying from this by less than half a point. On the part of the steamer, it is claimed that the schooner changed her course across the steamer's bows. But I am satisfied, from the whole evidence, that this defense is not sustained. It was the duty of the steamer to keep out of the way of the schooner. The lights of the latter were visible in ample time to enable the steamer to do so. And as I must find that the schooner held her course, and is in no wise to blame, and there was nothing in the way to prevent the steamer from avoiding her, it follows that the responsibility for the loss must fall upon the steamer.

In arriving at the above conclusion, I have not failed to observe carefully all that has been said by the master of the steamer, and by the other witnesses in her defense. But the theory presented by the master, his estimate of times and distances, of the amount of his porting, and of the amount to which he brought the schooner on his port bow, namely, some three or four points at a distance of three or four hundred yards, cannot possibly be correct, since the collision in that case could not pos-

sibly have happened when the steamer was going at about three times the rate of the schooner. The probability is that the steamer, first seen a trifle on the schooner's port bow, soon afterwards crossed the schooner's course, when, seeing both of the schooner's lights, the steamer ported until the schooner's green light was shut in, and the red only was seen; that the steamer then immediately steadied, whereas she ought to have gone much more to starboard, if she meant to take that method of keeping out of the way; that the schooner's green light almost immediately came into view again, and then the steamer ported hard, but the collision happened a few moments afterwards. The change in the schooner's lights was probably caused by the usual yawing that unavoidably happens to a vessel sailing, like the Belle Hooper, with the wind nearly aft. The mistake of the steamer, I think, was—*First*, in not seasonably observing the schooner, and in not taking the proper measures to avoid her early enough; and, *second,* that, when she determined to go to starboard, she did not port long enough or strong enough to give the schooner a sufficiently wide berth; in other words, she was shaving too close. *The Benefactor*, 8 Ben. 426, 14 Blatchf. 254; *The Zodiac*, 9 Ben. 171; *The Farnley*, 8 Fed. Rep. 629, 637; *The Laura V. Rose*, 28 Fed. Rep. 104, 108; *Wells* v. *Armstrong*, 29 Fed. Rep. 216, 218; *The City of Springfield*, Id. 923, 36 Fed. Rep. 568. No fault being established in the schooner, the libelants in the first case are entitled to a decree for damages and costs. The second libel must be dismissed, with costs.