Brown, District Judge.
At about half past 1 o’clock in the morning of November 25, 1891, the schooner Norman of 367 tons, loaded with a cargo of lumber, bound from Savannah to Baltimore, and then heading about northeast, came in collision off the coast of North Caro *238 lina with the steamer City of St. Augustine, of 390 tons, bound southward upon a course S. W. ¾ W. The stem of the City of St. Augustine first struck the end of the schooner’s jibboom, or bowsprit, which being broken at the knightheads and carried away, their bows came in collision. The schooner was so damaged that she filled, but did not sink, and she was towed to Washington. The steamer sustained some injuries, and the above libel and cross libel were filed to recover the respective damages.
The night was dark but clear, with starlight; the wind was moderate, about north northwest; the lights of both vessels were properly set and burning. The steamer was going from eight to nine knots; the schooner, from four to five knots. When the vessels were from half a mile to a mile apart, the green light of each was seen by the other a little on the starboard bow of each. It is evident, therefore, that the schooner was at that time to the westward of the line of the steamer’s course, which was then also directed astern of the schooner; otherwise the steamer’s red light must have been visible. But the schooner was making, doubtless, a half point leeway, so that her actual course was very nearly opposite to that of the steamer. It was the duty of the steamer to keep out of the way of the sailing vessel. The excuse of the steamer for not doing so is that the schooner did not keep her course; but that after having first turned to the eastward sufficiently to show her red light to the steamer, (upon seeing which the steamer changed her course a point and a half to the westward, so as to bring the schooner’s red light well upon the steamer’s port bow,) the schooner again changed her course to the westward so as again to show her green light; whereupon the steamer put her course still more to the westward, until at collision she was heading about due west; and that the collision happened solely in consequence of the improper changes of course by the schooner. Such changes are denied by the schooner’s witnesses.
Besides some evident mistakes by the witnesses on both sides, there is a substantial conflict in the testimony in regard to the navigation, the lights visible, and the changes of course, which cannot be wholly reconciled as the testimony stands. The apparent conflict, however, will be greatly diminished by making allowance for the following considerations: (1) A difference of from half a point to a point between the mean heading of the schooner, which, I have no doubt, was about northeast', and her actual course so much more to the eastward, through leeway; (2; the crossing of the schooner’s lights probably at least a quarter of a point on each side; (3) the yawing of the schooner probably irom a quarter of a point to half a point on each side of her mean course; (4) a considerable excess in the steamer’s estimate of the time and distance'before collision when the schooner’s red light was first seen. Her witnesses estimate the distance at half a mile; probably it was not one third of that distance.
In behalf of the steamer it is sought to discredit the witnesses for the schooner, to the effect that no change was made in their course, by arguments concerning the navigation based upon the steamer’s testimony *239 and estimates with regard to the bearing of the lights, their changes, and distance. There is realty nothing to substantiate the correctness of these estimates, and without them such arguments have little force. Amid such uncertainties in the testimony and estimates, the greatest weight must be given to facts that rest upon more certain testimony, orare more satisfactorily established.
The witnesses for the steamer testify that the angle of collision was nearly a right angle, and considerable stress is laid on this testimony. If this is correct, inasmuch as the steamer changed at most but 31 points to the westward, it follows that the schooner, besides coming back from her previous supposed change, must have changed some 31 points further to the westward also. The only deviations which the witnesses for the schooner admit are, the unavoidable yawing each way of perhaps one fourth of a point from their mean course, and when the steamer was very near, an order to put the wheel hard aport, in order to avoid, as far as possible, the impending collision, which they say occurred before the wheel was hard over.
The angle of collision is often valuable in determining doubts, when the angle is agreed upon, or otherwise definitely established. The Roanoke, 45 Fed. Rep. 905; The Joseph Stickney, 50 Fed. Rep. 624, (May 14, 1892.) But where the collision is in the nighttime, and the angle is a subject of dispute, not much weight can be given to the mere estimates of either side on this point. The Havilah, 33 Fed. Rep. 875, 881, affirmed 1 U. S. App. 138, 1 C. C. A. 519, 50 Fed. Rep. 331; La Champagne, 43 Fed. Rep. 444, 447.
In the present case there are several circumstances which so strongly corroborate the schooner’s witnesses as to her course, that I am persuaded that their account in this particular is substantially correct, and that the steamer’s witnesses are mistaken in supposing the angle of collision to have been nearly a right angle.
1. Next to the blow upon the stem of the steamer, her chief injury was about 14 feet abaft the stem on the port side. As the steamer was going about twice the speed of the schooner, it is impossible, after the schooner’s bowsprit, 15 feet long, had been broken off near her stem by the running of its end against the stem of the steamer, that any part of the schooner could have reached the steamer in time to inflict such a blow as the steamer shows only 14 feet abaft the stem, had the steamer been crossing the course of the schooner at nearly a right angle, or at a greater angle than about three points. The schooner’s heading must have been much checked by the first blow.
2. The injuries to the schooner consisted in the driving over of her port bow, her port cathead timber, and her deck, from port to starboard, showing a heavy blow on the port bow at some little distance abaft her stem. Had the collision been nearly at right angles, the direction of the damage to the schooner, considering the steamer’s great comparative speed, would have been from starboard to port.
3. The damage to the steamer some 14 feet abaft her stem on the port side is such as would naturally have been received from the port cathead *240 of the schooner upon a collision of the bows at an angle of two or three-points. The cathead, about 12 feet from the stem-, projected about 18 inches, and by the blow of collision it was driven in, with the deck, two-feet to starboard, and the inboard end of the cathead beam was split. These circumstances cannot be accounted for upon the steamer’s theory of a right-angled blow. They accord entirely with the story of the-schooner, and show that at collision the difference from opposite courses did not probably exceed two or three points. As the steamer changed her course at most only about 3¼ points to the westward,, the schooner’s-change must have been less than a point to the eastward, and this agrees with the schooner’s testimony that her wheel was ordered hard aport. when the steamer was very near.
4. The schooner could not have changed two or three points to the-westward without her sails shaking in the wind, whereas at collision they were full.
5. The evidence shows that the schooner scraped along the port side-of the steamer, carrying away the mizzen lanyard and a spar rigged out. there, her quarter being 30 or 40 feet away.
All those circumstances are consistent and are incompatible with any material change of course, and confirm, therefore, the testimony of the-schooner’s witnesses. I credit this narrative rather than that of the-steamer, because it is better sustained by the circumstantial proof.
The schooner’s slight change under a port wheel in extremis a few moments before collision, was not a fault, nor did it contribute to the collision. Without attempting to determine precisely the minute points-concerning the steamer’s navigation, I am satisfied the real fault that, brought about the collision was, that having the schooner’s green light, nearly straight ahead as reported by the lookout, and being herself all. the time to the eastward of the schooner’s actual course, the steamer did not in her maneuvers allow a sufficient margin for passing the schooner, nor for the usual and necessary variation in her course, or changes of lights, through yawing, leeway, and the crossing of lights; and that consequently she did not at first keep away sufficiently to port; nor afterwards, when the schooner’s red light appeared, which, in my judgment, was when the vessels were less than 1,000 feet apart, did she seasonably or sufficiently go to starboard. The Beta, 40 Fed. Rep. 899. The Roanoke, 45 Fed. Rep. 905. The red light probably came in view at the extreme swing of the schooner to starboard in yawing, whereupon she-resumed the opposite swing to port. It is quite possible, also, that the steamer’s heading west was not reached until after collision, aided, as-it must have been, by the blow from the schooner upon the stem and bow of the steamer. It is evident from the testimony that the order to-go west was almost at the moment of collision; and the previous changes of 2| points could have been easily made by this small steamer in going a distance of 400 feet, with but a small offing to the westward, not sufficient to clear the schooner.
Decrees may be entered in favor of the schooner as against the steamer, with costs.