Simonton, District Judge.
Upon the call of this case the libelant (appellee) moved to dismiss the appeal. His grounds are these: The cause was heard at Norfolk, and final decree entered December 4, 1890; notice of appeal, 10th December, 1890; appeal bond, 10th December, *397 1890; record certified 9th January, 1891. The session of the circuit court next held in the district was at Alexandria, 4th January, 1891. The cause was not docketed at that term, but at the term at Norfolk, beginning first Monday in May, 1891. Section 631, Rev. St. U. S., declares: “From all final decrees of a district court in admiralty * * * an appeal shall be allowed to the circuit court next to be held in such district. * * *” This is imperative. U. S. v. Specie, 1 Woods, 14; Insurance Co. v. Younger, 2 Curt. 322. The appellant observed the rules of the district court in his notice of appeal and in giving the appeal bond. 2 Hughes, 596. The record was not exactly in time, but this point appellee has waived. The ground of dismissal is that the cause was not docketed at the term at Alexandria. By a rule of the circuit court, promulgated 20th May, 1885, the appellant must file a copy of the record of the cause from the district court in the circuit court before the next ensuing term of the circuit court which shall be held where the cause is pending. While admitting that the practice conforms to this rule, the appellee insists that the rule is inoperative, because it contravenes the section of the Revised Statutes. It is unnecessary to go into this question, as it has ceased to be of any practical importance. Under any circumstances, we would be unwilling to dismiss this appeal on grounds like this, as it really is an appeal from the district court to this court, the whole action of the circuit court therein being pro forma. But we think that the case can be retained. The appeal was duly entered, and security given, and proper steps taken to prepare the record; so the appellee was not surprised, or in any way injured. “The failure to prepare and deliver to the circuit court the appeal and record in twenty days cannot prevent the circuit court from entertaining the cause if, from any reason, this is not done. The appeal, when once made, continues during the whole of the next term of the circuit court, unless sooner dismissed by that court for want of prosecution or otherwise, in accordance with its own practice.” The 8. 8. Osborne, 105 U. S. 450. No motion to dismiss was made. The cause being, in contemplation of law, in the circuit court, remained in that court, and was subject to its order. The motion to dismiss the appeal is refused.
We consider the case on its merits. The libel is filed for a collision in the Elizabeth river between the schooner John W. Hall and the steamer Chatham. The schooner is 101 feet long, and 152 tons burden. The Chatham, a seagoing steamship, is 285 feet long and 40 feet beam, drawing 15 feet. On the night of 4th October, 1889, the schooner was on her way to Norfolk, under sail, up Elizabeth river, steering south by east, about a half mile below Craney Island lighthouse. The general direction of the river is north and south. The channel is 1,200 or 1,500 feet wide. On each side of the channel there is sufficient depth of water for several hundred feet for a vessel the draught of the schooner. When the schooner was about the distance stated from Craney Island light, she saw the steamship Chatham coming down the river about mid-channel, at a speed of nine knots. She had shown her green light when a little *398 above the lighthouse, but, after getting almost abreast of it, she showed her red light, and continued to do so until within 50 or 75 yards of the schooner. Each vessel had the other a point—it may be, a little less— off her port bow. When the steamship got within 50 or 75 yards of the schooner, the lookout on the schooner became alarmed, swears that he saw both of her lights, abandoned his post, and ran aft to the wheel. There he found the master, under the impulse of similar fear, in the act of putting the wheel hard astarboard. The head of the schooner was ■quickly turned from her former course, south by east, with the wind free to east. She ran about two or three of her lengths, and came into •collision with the steamship. The latter, as soon as she saw the sheer •of the schooner, put her helm hard aport, and backed her engines. This threw her head to the east also, and the vessels came into collision, the port bow of the steamer with the starboard bow of the schooner, the latter having been struck about the bluff of the bow.
The district court held the steamship wholly in fajilt. This was affirmed pro forma by the circuit court.
The testimony in this case is exceedingly confusing and contradictory. The conclusion must be reached, not from the theories of, or even from strict regard to the testimony, of the witnesses, but from the controlling facts of the case, and from the logic of events. The witnesses for the libelant, with a single exception, put the schooner at the time of the collision well to the westward of the channel. All concur that the steamship was, as her draught would require her to be, in the channel, say mid-channel. The schooner put her wheel hard astarboard just before collision, crossed the channel almost at light angles, went a distance two or three times her length, and at the instant of collision, which occurred in a very short interval, she was, as they say, several hundred feet to the eastward of the channel,—210 yards. Evidently this is all a mistake.
The most probable theory is that the schooner was proceeding to Norfolk either just outside of or within the western edge of the channel. The steamer was coming down the channel near mid-channel. The general course of the two vessels was about a point off the port bow of each other. But as the master and people on the steamship say that the schooner sometimes showed one and sometimes another of her lights, .she must have been yawing under the action of the tide and wind, and the- relative course of the two vessels at times was much less than a point. 'The City of Truro, 35 Fed. Rep. 318. When they got within 50 or 75 yards of each other the lookout- on the schooner became alarmed. He says that up to that time he had only seen the red light, but then he saw both the red and green. Fearful of imminent collision, he ran back to the wheel, and saw the master, who says that he witnessed the same thing, in the act of starboarding his wheel. If this be true, the people on the schooner had reason for alarm. Naturally they felt that they were in extremis, and acted accordingly. As the schooner showed to the steamer sometimes both her lights and then one light and then another, making her course in some measure uncertain-to her, this tended to *399 make the course of the steamship uncertain to the schooner, especially as the two vessels were only a point off. When the steamship, therefore, allowed herself to come so near the schooner, she committed a grave fault. Her master might reasonably have expected that the crew of the schooner would be alarmed. He did not fear a collision himself, because he had control of his own vessel. But how could he answer for them? If the channel were so narrow as to forbid him to get away from the schooner, or if there had been any other vessel obstructing the river, it would have made a great difference. The schooner was either to the west of the channel, or on the edge of the channel. In either case the steamer had the whole width of the channel to pass her. Even if we put the schooner in mid-channel, the steamer would have had space from 600 to 760 feet on each side of her. Yet the steamer selected a course which, if no accident had happened, and each vessel had steaily kept her course, would have carried her within 11 feet of the schooner. There was no necessity for this proximity, which caused alarm on the schooner, and led to her abrupt change of direction. The Carroll, 8 Wall. 306. The rule of navigation is imperative. The steamer must keep out of way of a sailing vessel. The Falcon, 19 Wall. 76. This does not mean, must pass her without striking. The steamer must keep away. In the language of Mr. Justice Grier, it is her duty to keep clear and give a wide berth to the sailing vessel. Haney v. Packet Co., 23 How. 287.
These rules of navigation are obligatory upon vessels when approaching each other from the time the necessity for precaution begins. They continue to be applicable as the vessels approach each other, so long as the means and opportunity to avoid the danger remain. They do not apply to a vessel required to keep her course after the approach is so near that the collision is inevitable. The Wenona, 19 Wall. 41. It is not necessary that the collision be in fact and in the strict use of language inevitable. But it is enough if the danger be such as to induce a seaman of ordinary skill and courage to conceive it to be inevitable. Under the circumstances of this case, we think that the departure of the schooner from the rule which required her to keep her course was an error, not a fault. The Carroll, supra. Her master was an experienced seaman, 16 years master of a vessel engaged in the coasting trade, and comparatively a young man. The lookout was a young man, with 12 years’ experience in navigation on these waters. It would seem as if all the conditions required by Taney, C. J., in Haney v. Packet Co., 23 How. 287, are met in this case:
1 Note. The language of Dr. Lushington in The Colonia, 3 Notes of Cas. 13, is not inappropriate here, hearing in mind that a steamer is under obligation to do what a sailing vessel going free should do. St. John v. Paine, 10 How. 582. “The whole evidence shows that it was the duty of The Colonia, with the wind free, to have made certain of avoiding the Susan. She did not do so, but kept her course until she was at so short a distance as a cable and a half length, in the hope that the vessels might pass each other. Now, it can never be allowed to a vessel to enter into nice calculations of this kind which may be attended with some risk whilst it has the power to adopt, long before the collision, measures which would render it impossible. ” The Colonia, 3 Notes of Cas. 13, note quoted by Marsden in Law of Collisions at Sea, 306.
*400 “In order to excuse an erroneous movement on the part of the sailing vessel, the proximity of the steamboat, and her course and speed, must be such that a mariner of ordinary firmness and competent knowledge and skill would deem it necessary to alter his course to enable the vessel to pass in safety. But, in order to justify this, the dangerous proximity must be produced altogether by the steamboat.”
The decree of the circuit court is affirmed, with interest, the costs of the appeal to be paid by the appellant.