## THE PAOLI.

(District Court, S. D. New York. November 5, 1897.)

COLLISION—STEAM AND SAIL—YAWING—LUFFING CLOSE—SHAVING—BOTH VESSELS AT FAULT.

When a tug .was a mile from a schooner, going in opposite directions at night, the master of the tug saw the schooner's red light a little on his port bow and changed his course a little to starboard; he kept that course. with the schooner's red light at all times on his port bow, until he was within 400 or 500 feet from it, when the schooner luffed from three to four points across his bow, and was struck by the tug at an angle,· between the main and mizzen chains, and sunk immediately. The schooner was without a lookout forward, and the evidence tended to show that she was continually yawing to windward, and that her master had either not seen the tug when he gave the order to luff, or supposed her ahead, or on her port bow. *Held*, that the tug was guilty of negligent navigation in attempting to pass too near to the schooner, and that the schooner was also negligent in not maintaining a proper lookout and in luffing, and that both vessels contributed to the collision, and that the damages should therefore be divided.

In Admiralty. Collision.

Robinson, Biddle & Ward, for libelants.

Cowen, Wing, Putnam & Burlingham, for claimant.

BROWN, District Judge. The above libel was filed to recover for the loss of the three-masted schooner A. E. Rudolph by a collision with the tug Paoli off Cape Cod, a little before 3 o'clock in the morning of May 9, 1897. The weather was clear and dark, but with starlight; the wind, about W. S. W. The vessels were on opposite courses, the schooner sailing nearly due north; the tug, with three barges in tow on long hawsers, going nearly due south. The schooner was struck by the stem of the tug on her starboard side, between her main and mizzen chains, and sank in about one minute in 12 fathoms of water. The master and all the rest of the crew, except the wheelsman, and the steward who was below, were lost. The tug ascribes the disaster to a sharp luff made by the schooner just before collision. The wheelsman of the schooner denies any luff, except about half a point, which he says was partially corrected by putting the wheel hard up with the master's help just before the collision. The libelants in aid of their case have called three witnesses from the schooner Knowles, which is alleged to have been near by. The respondent contends that the Knowles was not at the time in the neighborhood of the disaster.

I do not see any sufficient reason to doubt the near presence of the schooner Knowles as testified to by three of her crew. In one respect their testimony confirms the claimant's contention, namely, that the Rudolph did not keep a steady course to the northward, but was occasionally yawing or luffing. The Knowles, sailing about north, was being overhauled by the Rudolph, which was coming up on a course a little to the eastward of the Knowles and upon her starboard quarter. The men on board of her say the Rudolph was sometimes showing both lights, sometimes the green only, and some-

times the red only. When the wheelsman last noticed her she was showing her red light only, and this is the light that would at the same time be exposed to the Paoli, which was coming down in the opposite direction from the northward a little to the eastward of the Knowles' course. The mate of the Knowles says that not long before the colllision, the Rudolph luffed so as to show both her lights to him, and that he changed the course of his own vessel a little, so as to show her cabin light to the Rudolph. It is not necessary to determine the precise moment when these changes were made.

The story of Johnson, the wheelsman of the Rudolph, as given in his testimony on the trial and in his sworn statement soon after the disaster, admits a luff of half a point only, a few moments before the collision, and he swears to an immediate endeavor of the master to counteract that luff by putting the wheel hard up. There was no lookout forward; and it is evident that the master had not seen the tug prior to the time when the order to "luff a little" was given; and whether he saw it then or not is not known. The wheelsman saw the tug a moment before collision just after the order "hard up" was given.

From these circumstances it might be inferred that the tug was coming down on the starboard bow of the schooner and that her lights were hidden by the schooner's sails, which were broad off to starboard.

The master of the tug, however, testifies positively that he had the port light of the Knowles on his port bow from the time the vessels were a mile apart; that he navigated the tug accordingly, and at that distance ported his wheel so as to bring the schooner's red light a point on his port bow; that he kept that course and had the schooner's red light all the time on his port bow until a few moments before collision, when the schooner being not over 400 or 500 feet away was seen to luff sharply, whereupon he ordered the engine reversed strong and put his helm to starboard. The Paoli a few moments after struck the Rudolph at an angle of three or four points on her starboard side, between her main and mizzen chains causing her to sink almost immediately as above stated.

It is evident that these accounts give no explanation of the collision except upon the gross fault of one or both of the vessels. They were originally upon nearly opposite courses and nearly head and head. If the tug a mile away had the schooner's red light a point on her port bow, she should and would have passed the schooner at a distance of 600 feet from her, unless the schooner decreased that distance by constant yawing or luffing. It could only be by the grossest carelessness of the schooner that the master, who was directing her navigation and walking athwart ships aft, should not have perceived any of the lights of the tug, had they been well on his port bow, as they must have been if the story of the tug is correct, that the schooner showed only her red light until very near. If the tug, however, was on his starboard bow, her lights might have been obscured by the schooner's sails, which were on the starboard side. Had the master seen the tug and perceived that she was on

his port bow, he would not have given the order to "luff a little"; and had he seen the tug on his starboard bow, he would have luffed earlier, if there was reason for luffing at all. I have no doubt therefore, that when the master gave the order to luff he either had not seen the lights of the tug at all, or supposed her ahead or on his starboard bow.

Notwithstanding the improbability that the master of the schooner should not have noticed the tug, if on his port bow, I feel constrained to accept the story of the pilot of the Paoli in that regard, in as much as no explanation of the agreed angle of collision seems possible except through the luff of the schooner, and also because of the partial confirmation of this by the Knowles' crew. For if the tug's course lay to the eastward of the schooner, that is, on the schooner's starboard side, so as to have the schooner's green light all the time in view instead of her red light, it is altogether incredible that the tug should have turned to the westward some three or four points so as to run directly into the schooner at such an angle. No possible motive or reason for such navigation can be conceived. I must find, therefore, that a luff of three or four points was made by the schooner; and that this finding is to some extent further confirmed by the proved heading of the schooner after she had sunk; although the possibility of some variation in her heading while going down prevents her position on the bottom from being regarded as conclusive, or more than confirmatory of other testimony.

While the schooner must, therefore, be held in fault for this luff, occasioned probably by the want of a proper lookout, the tug I am satisfied must also be held to blame for unreasonable and unnecessary close-shaving of the schooner.

I have already observed that if the pilot of the tug had set his course when a mile distant so as to have the schooner's red light a point off his port bow, he must have passed 600 feet to the westward of her, unless the schooner diminished that distance either by yawing or by intentional luffing. If the schooner kept thus hauling towards the tug, her pilot should have noticed the proof of it in the failure of the red light to draw off constantly more to port, long before the vessels had approached near each other. The only luff observed or complained of is stated by the pilot to have been when the vessels were not over 400 or 500 feet apart, and when the schooner bore about 2 or 3 points (probably less than that) off the tug's port bow. This must have been less than half a minute before collision. The pilot of the tug immediately ordered to reverse strong. Her witnesses estimate this at about a half minute before collision; but the second engineer who was in charge of the engine, says he got no more than 15 or 20 revolutions backward, which would occupy less than a quarter of a minute; and the first engineer, who was awakened by the signals to reverse, did not have time to get on his overalls before the collision occurred. These circumstances show that the vessels must have been very near each other, probably at no greater distance than that stated by the pilot of the tug, when the luff referred to took place; and that the schooner, therefore, could

not have gone more than 200 feet between that time and the collision. Assuming that in going so short a distance, she was able to luff as much as three or four points, a drawing of the curve of her course in making such a change in that distance, will show that she could not have gone more than 50 to 75 feet to the westward of the line of her previous course by such a luff; and yet so small a change in the schooner's position to the westward must have brought the tug from the schooner's port side, where the tug was intending to pass, to the schooner's starboard side where the collision occurred. This shows that the schooner when she luffed must have been less than two points on the tug's port bow. It also shows that the course of the tug must have been in fact directed extremely close to the port side of the schooner, constituting a case of extreme close-shaving, which has been repeatedly condemned as unjustifiable and blamable navigation. It is the duty of the steamer says Waite, C. J., in The Farnley, 8 Fed. 629, 637, "to give a passing vessel a wide berth when it can be done and to run no risks of errors or miscalculations." The same duty was stated by Mr. Justice Grier in Haney v. Packet Co., 23 How. 292; The Virginia Ehrman, 97 U. S. 316. In the case of The Benefactor, 14 Blatchf. 254, 256, Fed. Cas. No. 1,298, a cable's length for a steamer going ten knots an hour was held too close. In The Zodiac, 9 Ben. 171, 176, Fed. Cas. No. 18,217, Blatchford, J., said "starboarding a point was not enough." And see The Laura V. Rose, 28 Fed. 104, 109; The City of St. Augustine, 52 Fed. 237; The Dorian, 68 Fed. 1018; The Chatham, 3 C. C. A. 161, 52 Fed. 396.

From the testimony of the witnesses from the tug and the Knowles, I have no doubt that the schooner was continually working to the westward of her intended course by yawing, as the wind was considerably aft of her beam; and this was sure to result, unless constantly counteracted by a port helm. But the steamer was bound to guard against this well-known liability, by not making any close shave and by keeping away by a reasonably safe margin. A proper attention to the schooner's approach would have shown that the tug was drawing away from her too slowly. It is possible that the master's order to "luff a little" may have been given when he suddenly saw the tug near, and from lack of previous observation erroneously supposed that she was going to the eastward of him. As he was lost, the real explanation is unknown.

If the schooner had previously maintained a proper lookout forward, evidently no such change of course as was caused by this luff would have been made; or if it was induced at the last moment by fear, through the very close approach of the tug, the whole blame might have been put on the latter. But the absence of any previous lookout and the distance of the tug when the schooner luffed, preclude the schooner from receiving this advantage. It is certain, however, that if the tug had kept away at a reasonable distance to the westward, no collision could have occurred.

As both vessels thus contributed to the collision, the damages should be divided, as in the cases above cited.

Decree accordingly.