### THE DORIS.

### THE NATHAN HALE.

(District Court, E. D. New York. April 16, 1901.)

COLLISION—TUG AND TOW OVERTAKING SCHOONER—NEGLIGENT NAVIGATION.

A schooner entering Hampton Roads in the night, and sailing free at a speed of 3 miles an hour, was overtaken and passed by a tug having a tow, on a 200-fathom line, and sailing at a speed of 6 miles on nearly a parallel course. The tug saw the schooner when 1,500 feet distant, and passed her at a distance of 300 feet or more, but the tow failed to see her until within 200 feet, and struck her directly astern. *Held*, that both tug and tow were in fault for the collision,—the former in not keeping watch to see that the tow was following properly in passing the schooner, and the latter because of the failure of her master to follow the tug; that the schooner could not be held in fault, since, even conceding the claim of the tug—which was denied—that she changed her course after the tug passed, she could not, by such change, have brought about the collision, considering the relative speed of the vessels.

In Admiralty. Suit for collision.

Hyland & Zabriskie, for libelant.
Carpenter & Park, for the Nathan Hale.
James J. Macklin, for the Doris.

THOMAS, District Judge. On August 22, 1900, the schooner Florence Shay was passing through Hampton Roads with the intention of anchoring at the Middle Ground. The tide was flood, and the wind was northeast. The schooner was sailing free, on a W. S. W. course. Shortly previous to 3:30 a. m. the tug Nathan Hale, on a S. W. by W. course, and about 1,500 feet astern, made out the schooner by her form, not by a stern light. About the same time the captain of the schooner saw the tug. Upon seeing the schooner, the master of the tug put his own vessel half a point to starboard, and before the tug came up the captain of the schooner put her half a point to port, and, if this be so, the tug was sailing on a course S. W. by W. $\frac{1}{2}$ W., and the schooner on a course W. S. W. $\frac{1}{2}$ S. Hence the courses were parallel. The tug was going at the rate of six, and the schooner at about the rate of three, miles per hour. The tug passed the schooner off Hampton Bar, at a distance from the latter of 300 feet, as stated on the trial by the captain of the schooner, and at a distance of about 900 feet, as appears from the evidence of the respondents, and as is shown in the log and protest of the schooner. After discovering the tug, the captain of the schooner went to the after part of his vessel, and either held in his hand or placed upon the house a lantern, which the persons connected with the tug testify they did not see. Although the tug carried lights indicating that she had a tow, the captain of the schooner failed to discover the same until the coal barge Doris, which had been a propeller steamer with a sharp bow and sharp straight stern, carrying the usual sidelights and stern light, was seen by him about 150 feet astern. The master of the Doris did not discover the schooner until he was about 200 feet away from her. He immediately ordered the wheel hard a-port, but the Doris struck with great violence the schooner immediately in her stern, doing the damage for which the libel is filed. The force of the blow turned the schooner's bow to starboard, and the tug, unmindful of the collision, continued her course, so that the Doris struck the schooner again somewhere in the neighborhood of the bow, carrying away certain of the headgear. The tug continued on her course even after this time, and only stopped on a hail from the captain of the Doris. The green light of the Doris was seen on the schooner just previous to the collision, and the light of the schooner was not seen by those on the Doris, as such persons testified.

The first obvious fact is that a schooner, which had been seen by those on a tug 1,500 feet away, was struck squarely in her stern by the tow, which did not see the schooner until within about 200 feet of her. From this fact negligence should be inferred, both on the part of the tug and the barge, unless there is some fact which should modify or avoid that conclusion. A tug entering a harbor, and passing a schooner, with such absence of watchfulness as to permit

her tow on a hawser of 200 fathoms in length to collide with the latter, should be condemned (The John H. May [D. C.] 52 Fed. 884; The Minnie, 40 C. C. A. 312, 100 Fed. 128; The City of St. Augustine [D. C.] 52 Fed. 237; The Robert Burnett [D. C.] 46 Fed. 415; The N. & W. No. 2 [D. C.] 102 Fed. 921); and certainly a barge upon a hawser of 200 fathoms, such as was used in this instance, which deflected from the course of her tug to such an extent as to come in collision, and whose navigators were so lacking in watchfulness as not to discover the danger until too late, should also be condemned. The America, 42 C. C. A. 617, 102 Fed. 767. To escape the accusation of fault, both the tug and the barge charge that the tug passed 900 feet to the starboard of the schooner, and that by no possibility could a barge upon a hawser of 200 yards deflect from her proper course to such distance, and thereby come into collision. Therefore, it is argued, the schooner must have changed her course by going to the starboard, and falling precisely into the wake of the tug, and thereby suffering the Doris to be drawn upon her. There are some manifest difficulties in a conception of the schooner crossing to the distance of 900 feet, and straightening herself up alongside and in close conjunction to the hawser, in such a manner as to permit the barge to be drawn upon her; and yet, if the claimants' theory is correct, such must be what she did. But, as the claimants state, there were 900 feet between the tug and the schooner, and the barge insists that she was directly in the wake of her tug; hence, pursuant to claimants' contention, the schooner must have gone to starboard for 900 feet, and then adjusted herself to receive the blow. If she had gone about, making directly for the course of the tug, the Doris would have gone forward 1,800 feet, while the schooner was going laterally 900 feet. Hence the barge would have been 600 feet ahead of the bow of the schooner before the latter reached the course of the barge. Moreover, if the schooner had taken any course short of a direct one to be the course of the tug, she would then have been much longer in reaching that course, and by so much more would the tow have been out of the way. It is, therefore, mathematically impossible that the distance could have been so great as 900 feet. But, assume that the distance was 300 feet, as claimed by the schooner, could she then have changed her course in such a manner as to have gotten into the way of the tug after the latter came up with her? If at that time the schooner had gone to starboard three points, still it would have been necessary for her to travel 1,200 feet before she would come at all near the tow, and even then the tow would have traveled 2,400 feet, and would have passed some 30 feet to the starboard, and would have been ahead of her. But for what ascribed or conceivable reason would the course of the schooner be changed three points to starboard? Whether she wished to anchor at the Middle Ground or Hampton Bar, she would not have made such sudden change, with a heading absolutely contrary to that suggested either in the pleadings or upon the trial by either party. The answer of the tug states that when the tug discovered the schooner both vessels were apparently upon the same course, and that the course of the Hale was S. W. by W. It was the intention of the schooner to anchor at the Middle

Ground. The course of W. S. W. on which she was sailing at the time she discovered the tug would take the schooner to the windward of Middle Ground and south of Hampton Bar. The captain of the schooner states that he intended to anchor beyond the bar, between the bar and Middle Ground light. He must have changed from this course nearly three points to come to the hawser of the Hale before the Doris reached the same point. Even in that case he must not only come upon the hawser of the Hale, but also must get directly over it, to permit the stern collision such as took place. This whole contention is beyond any mathematical probability, and is entirely beyond any reasonable conception. There is no evidence whatever that the schooner did change her course to starboard, but all the evidence is that she came a half a point to port. The court is asked to infer that she did change, because the barge did run into her, and those on the barge state that she did not change her course, and followed directly the wake of her tug. But, whether she changed her course or not, the physical fact is that she came up behind the schooner, and collided with her, and her negligence in that regard may not be gainsaid, unless she can give some affirmative evidence of fault on the part of the other vessel. The fact that she was where she was outweighs all her denials, affirmations, and accusations. From what has been said it is apparent that the schooner could not have changed her course so as to bring herself in the way of the barge, and the tug and barge remain with the collision unexplained. Hence the barge is found negligent for a lack of watchfulness and such unskillfulness in navigation as to allow the stern collision with a preceding vessel. The tug is found in fault for so negligently conducting the tow as to be unconscious of the fact that, either by accident or design, it was not following in a course that would enable it to clear the schooner. The libelant should have a decree for his damages and costs against both vessels, and, as between themselves, the barge and the tug will divide the damages.