## THE SHINSEI MARU.

(District Court, E. D. Virginia. June 15, 1920.)

1. **Collision** &xrightarrow{} 71(2)—**Passing vessel in fault for collision with stationary dredge.**

   A collision in Elizabeth river between one of two passing vessels and a scow alongside a dredge stationed to one side of the center of the 600-foot channel *held* due solely to the fault of such vessel in changing her signal, so as to require passing the other vessel starboard to starboard, which brought her next to the dredge and in failing to sooner stop and reverse.

&xrightarrow{}For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Collision** ⊂⇒**71 (2)—Duty of moving vessel to avoid risk of collision with stationary vessel imperative.**

    The obligation on the part of free vessels to avoid risk of collision with those incumbered or at rest is imperative.

3. **Collision** ⊂⇒**74—Defense of suction not sustained.**

    Defense that collision with a stationary dredge was caused by suction of a meeting vessel *held* not sustained.

In Admiralty. Suit for collision by the Maryland Dredging & Contracting Company against the Steamship Shinsei Maru. Decree for libelant.

Knapp, Ulman & Tucker, of Baltimore, Md., and John W. Oast, Jr., of Norfolk, Va., for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City, and Hughes, Vandeventer & Eggleston, of Norfolk, Va., for respondent.

WADDILL, District Judge. The collision, the subject of this litigation, occurred about 5 o'clock on the evening of January 15, 1919, in the Elizabeth river, some 450 feet to the southward of Boush Bluff buoy, under the following circumstances:

The libelant's dredge Kennedy was anchored about 50 feet to the eastward of the center of the 600-foot dredged channel, engaged in dredging, and had made fast to her a mud scow, used in connection with the service, known as scow No. 26. The respondent ship, the Shinsei Maru, a Japanese vessel, loaded, 329 feet 6 inches long, 48 feet beam, and 15 feet 9 inches deep, navigated by a United States pilot, was passing up the channel, and observed the dredge some 2 miles away, and also, when approximately a mile away, observed the United States steamship Canonicus, then about three-quarters of a mile away, above the dredge, coming down the channel. The Shinsei Maru sounded one blast of her whistle, with a view of effecting a port to port passage with the Canonicus, which the latter answered with one whistle, but before her helm responded to these signals the Shinsei Maru sounded two blasts of her whistle, indicating her desire to effect a passage starboard to starboard, to which the Canonicus gave her assent by sounding two blasts of her whistle, and the two vessels so proceeded to navigate with respect to each other that the Canonicus took the western side of the channel, and the Shinsei Maru navigated to the eastern. The ships thus passed each other some 250 feet to the northward of the dredge, and the Shinsei Maru, while making the starboard passage, came into collision with the starboard quarter of scow No. 26.

[1] There is no claim that either the dredge or scow were guilty of fault, and as a matter of fact the testimony seems undisputed that, in apprehension of possible danger of collision with the Shinsei Maru, the dredge actually succeeded in so throwing her bow to port, and away from the up-coming steamship, as to widen the space between the vessels some 50 feet. This, however, did not prevent the Shinsei Maru from striking the scow with considerable violence, causing much damage.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Shinsei Maru seeks to avoid responsibility for the collision by placing the same upon the Canonicus, and especially says that it was brought about by suction from the Canonicus, and, without fault on her part, she was forced against, and came into collision with, the scow.

The court's conclusion is that the Shinsei Maru cannot escape liability for bringing about the collision, by thus attempting to place the blame therefor on the other ship; nor can she, under the circumstances of this case, call for the latter to share her burdens or losses arising from her own negligence, by suggesting fault, or possible fault, on the part of the Canonicus. The Shinsei Maru, as viewed by the court, is at fault in the following particulars:

1. Under the circumstances she should have kept her proper course, to the westward side of the channel; that is, kept to the right, and carried out the port hand maneuver which she first attempted to do, but changed when she gave the signal for the directly opposite passage, which threw her nearer to, instead of away from, the stationary dredge. Under the port hand passage, the Canonicus should have passed between her and the dredge; whereas she confessedly inaugurated a maneuver which resulted in placing her, instead of the Canonicus, nearer to the dredge and scow. This alone is sufficient to account for the collision, certainly so far as she is concerned, as there was ample room within the 600-foot channel, as well as outside of it, to avoid collision with either the Canonicus or the scow made fast to the dredge.

[2] 2. The Shinsei Maru is also at fault for failure to discharge her duty to avoid the risk of as well as the collision itself. She did not stop or reverse her engines until within 250 or 300 feet of the dredge, which was a gross fault. She should not only have stopped and reversed earlier, but realized that, in attempting so to do in that short distance to the stationary vessel, such a maneuver would tend to kill her headway, and cause her to lose control of her movements, and in that way bring about a collision. The obligation on the part of free vessels to avoid risk of collision with those incumbered, or at rest, is imperative, and one that the admiralty courts must enforce, having regard to the perils of navigation and the importance of the rule of the road in respect thereto. The New York, 175 U. S. 207, 20 Sup. Ct. 67, 44 L. Ed. 126; La Boytaux, Rules of the Road at Sea, p. 109; The Jamestown (D. C.) 114 Fed. 593, 595. In the last-named case, a collision between a steamship and an incumbered vessel, which occurred a short distance above the scene of this one, it is said:

"There was nothing in the existing conditions to prevent the steamship's keeping out of the way of the tug and tow, and having seen the same at the distance it admits it was observed, at that hour of the evening, about dark, knowing that the tow was moving with the wind and tide, it should have exercised a greater degree of care and caution than it did in approaching the tow. Any error should have been on the safe side. It was not enough to have so acted or changed its course as possibly, or even probably, to have avoided a collision. No such chances need or should have been taken. The Wilkes-Barre (D. C.) 50 Fed. 582; The Chatham, 3 C. C. A. 161, 52 Fed. 396, 399; The Owego (D. C.) 71 Fed. 537; Mars. Mar. Coll. 377."

[3] 3. The defense that the accident was brought about by suction from the Canonicus is likewise not sustained. Such a defense would not in any event avail the Shinsei Maru, since she had no right to so navigate as to allow her to be drawn by the suction of a passing vessel into collision with a vessel at anchor. This was hazardous, and at least taking a risk likely to result disastrously, as well to the ship taking it as to other vessels not in fault, liable to be affected thereby. Moreover, the Shinsei Maru not only failed to sustain her suction theory, but the libelant quite clearly showed that there was nothing to warrant the claim; it being a collision between passing vessels. Two accomplished expert witnesses were examined by the libelant, whose testimony strongly sustains this view, that as between passing vessels the question of suction is theoretical, rather than practical, and certainly, under the evidence in this case, the same did not exist. The City of Cleveland (D. C.) 56 Fed. 729, a decision of Mr. Justice Brown in the District Court, discusses the improbability of suction from passing vessels. In The Ohio, 91 Fed. 549, 553, 555, 33 C. C. A. 667, Mr. Justice Lurton, in the Circuit Court of Appeals, a case in which a third vessel had been sunk, fully considered the subject of suction, and inevitable accident resulting therefrom. In the present case, the defense of inevitable accident would not avail the Shinsei Maru (The Maryland [D. C.] 182 Fed. 829, and cases cited), since it would be necessary to show that she herself was free from fault in bringing about the collision.

It follows, from what has been said, that the collision occurred solely through the fault of the Shinsei Maru, and a decree so ascertaining will be entered on presentation.