## THE CITY OF TRURO.[1]

### BALMER et al. v. THE CITY OF TRURO.

(*District Court, S. D. New York.* June 5, 1888.)

1. COLLISION—BETWEEN STEAM AND SAIL—GENERAL RESPONSIBILITY.
   Where upon the whole case there is no decisive evidence of fault on the part of the sailing vessel, the steamer must answer for the collision, if it was not inevitable.
2. SAME—FAILURE OF STEAMER TO AVOID SAILING VESSEL.
   The schooner W. M. was sailing eastward by night through Long Island sound, when she perceived, some miles distant, and nearly ahead, the lights. of the steamer City of T. The steam-ship, sailing nearly due west, struck the schooner, and sank her. The testimony from the schooner was positive that she made no change of course. The steamer alleged that the schooner altered her course, and showed four changes in her colored lights, and that this brought about the collision. *Held,* that the schooner's lights were either not seen in time by the steamer, or were neglected after being seen, and that the cause of the collision was the failure of the steamer to shape her course seasonably. so as to go on either side of the schooner with safety.

In Admiralty.
*R. D. Benedict,* for libelants.
*Sidney Chubb,* for claimants.

BROWN, J. On the 6th of February, 1888, at about 9 o'clock P. M., while the libelant's schooner William Mackay was sailing eastward in Long Island sound, a little to the westward of the Race, she came in collision with the steam-ship City of Truro, going west, and sank in a few minutes afterwards. This libel was filed for the loss of the schooner and cargo. The weather was good; the night clear, but dark, and good for seeing lights. The proper course of the schooner was east. Her witnesses testify that that was the course on which she was sailing, and which she maintained without change until the collision. The wind was about N. N. W., *i. e.,* about two points abaft the beam. She had all sails set, and was going at the rate of about four miles per hour. The steamer's course was about due west. Before the collision her wheel was put hard a-starboard, and at the time of collision she had swung from two to three points to the southward. The schooner's bowsprit struck the steamer on her starboard side, about 30 or 40 feet from her stem, and was broken near the cap, and then her stem struck the steamer further aft, and was more or less carried away. Her master and three other men had barely time to escape in a small boat before the schooner sank.

The libel charges fault upon the steamer in that, being to the northward of the schooner's course, she improperly undertook to cross the latter's bows, and did not keep out of her way, as she was bound to do. The faults charged upon the schooner are that she was improperly steered, and did not keep her proper course; that she showed four times a change

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

in her colored lights, and finally sheered to starboard under a port wheel, which, it is alleged, was the immediate cause of the collision. The navigation of the schooner, at the time of the collision, and before, was in charge of the captain, assisted by a young man, who was at the wheel. There were but two other men on board, and they were below. The captain and the wheelsman testify positively that no change was made in their course. Their account of the matter, from the time the steamer's white light was seen, three or four miles distant, a little on their port bow, is, in itself, natural, consistent, and credible. Nor do I discover in their testimony anything to cast suspicion on their capacity or truthfulness. The testimony as to the precise angle of collision is too uncertain to be entitled to great weight. The angle must have been less than a right angle, or the vessels would not have passed starboard to starboard. When, upon the whole case, there is no decisive evidence of fault on the part of the sailing vessel, the steamer must answer for the collision, where no circumstances appear to show that the accident was inevitable. With plenty of sea-room, and in good weather, a steamer is bound to take the necessary measures in time to avoid a sailing vessel.

The different accounts of the several persons examined in behalf of the steamer are in many respects widely discrepant, and even inconsistent with themselves and with each other. Though four changes of the schooner's lights from red to green, and vice versa from green to red, are alleged to have been seen by several witnesses, only one testifies that at any time were both of the schooner's lights seen, and that only once; and of this there is some doubt. This is strong evidence of a lack of proper attention to the schooner, if the several changes of lights occurred as alleged. The last three changes are stated to have occurred within intervals of a few seconds only. If these several changes were seen, they might be caused merely by a little yawing of the schooner while sailing under an aft wind, which would in no way involve any such substantial change of the schooner's course as to interfere with the steamer's performance of her duty to keep out of the way by a reasonable margin, if she had seasonably shaped her course to do so. I find it impossible, also, to credit the statement of the steamer's witnesses that the green light of the schooner was first seen a little on her port bow, and then brought by a starboard wheel to bear two points off the steamer's starboard bow, at any such considerable distance as the steamer's witnesses allege. The estimates of the distance at which the schooner first starboarded are very diverse, and it is difficult to come to any satisfactory conclusion upon the steamer's testimony alone. The master thinks the schooner's light was first seen when a mile and a half distant; but from what he says was done in the short time that elapsed up to the collision, it is difficult to make out a whole interval of two minutes from the time the schooner's light was first seen; or that the schooner could have been as much as a half mile distant. When the order to hard a-starboard was given, the vessels were probably not over 200 or 300 yards apart. On the whole, I am inclined to the opinion that the steamer was observed from the schooner long before the schooner was observed from the steamer; that they were

·going in very nearly opposite directions, the steamer being at first a little to the northward of the schooner and a little on her port bow; that the schooner's lights either were not noticed until they were quite near, or, if noticed from one to two miles off, were neglected afterwards t'll quite near, and that it was the schooner's red light that had been all the time before exposed to view; that the steamer then put her helm hard a-starboard to cross the schooner's bows; that the steamer was in fault for not seasonably shaping her course to go on either side of the schooner by a reasonable margin for safety, as she might easily have done; and that the evidence does not sustain either of the faults alleged against the schooner.

The libelant is therefore entitled to a decree, with an order of reference to compute the damages.