## THE WIOMA.

### BARBOUR v. THE WIOMA et al.

#### (Circuit Court of Appeals, Second Circuit. April 18, 1893.)

COLLISION—BURDEN OF PROOF—EVIDENCE.
  As the burden, in a collision case, is on the libelant to show that his adversary was in fault, the libel is properly dismissed when the court is convinced that the stories told by the principal witnesses on each side are both intentionally false.

Appeal from the District Court of the United States for the Eastern District of New York.

In Admiralty. Libel by William C. Barbour against the tugboat Wioma and others for collision with the schooner Sarah Potter. The libel was dismissed, and the libelant appealed. Affirmed.

W. W. Goodrich, for appellant.
H. Putnam, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. About 7 P. M. of October 3, 1889, a collision occurred, in the vicinity of Hart's island, between the schooner Sarah Potter, bound through Long Island sound from Perth Amboy, N. J., with a cargo of coal to Portsmouth, N. H., and two scows in tow of the tug Wioma, bound into the port of New York from Glenwood, L. I. The weather was clear, the tide strong ebb, setting to the eastward, and the wind a stiff breeze from S. S. W. The tug had two heavily loaded sand scows, towing on a hawser of about thirty fathoms to the first scow, and about six feet from the first scow to the second. The lights on both vessels were burning brightly. The schooner struck the head scow a glancing blow, and then came into collision with the starboard corner of the second scow, striking it with her own stem and port bow. The schooner sank. Contending that the collision happened solely through the negligence of the tug, the owners of the schooner filed their libel, setting out the facts as they understood them to be. Issue was joined by the filing of an answer. The burden of establishing the affirmative of the issues thus joined is, of course, with the libelant. He failed to satisfy the district judge of the truth of

his story, and the libel was dismissed, without opinion. Irrespective, entirely, of the conclusion reached by the district judge, the libelant has equally failed to sustain the burden of proof in this court.

The evidence is extremely conflicting on all material points. The theory of the libelant is that the schooner, sailing on a course N. E. ⅓ E. had reached a point southeast of Hart's island, about the middle of the channel, when, at the distance of about three quarters of a mile, she sighted the red light of the tugboat about half a point on her port bow; that the vessels proceeded on their respective courses till they were about 200 yards apart, when the tugboat changed her course to port so as to cross the schooner's bow, at the same time blowing a long whistle and two or three short blasts; that those on the schooner immediately put their helm hard astarboard, and let the spanker sheet run off, for the purpose of avoiding the collision. The maneuver was unsuccessful, for, though the tug crossed the schooner's bows, (with a margin of 100 feet or less,) her tow was brought across the schooner's course, even as changed two points to port by her hard astarboard helm, in such a way that the schooner struck nearly head on upon the bow of the second barge. Had both vessels kept their course, the libelant contends they would have passed each other port to port, two or three hundred yards apart.

The navigators of the tugboat insisted that they sighted the Potter a mile and a half or two miles away, showing her green light on the tug's starboard bow. There was no change in her appearance as they came near her, her green light still bearing on the starboard bow. The tug's wheel was kept astarboard, and when about a quarter of a mile apart her master gave a signal and several whistles to attract the schooner's attention. Had the schooner kept her course, there would have been no collision, but, instead of keeping on her course, she suddenly luffed up, passed the tug, but struck the tow. They testified that the schooner's red light was not seen until she came abreast of the tug.

Upon a careful examination of the record we find it impossible to escape the conviction that the narrative given by the principal witnesses called for the libelant is not in accordance with the facts, and that it was intentionally misstated in order to give support to the proposition that, when they sighted the tug and tow, the respective positions and headings of the vessels was such as would harmonize with the theory that the collision happened by reason of an abrupt change of course by the tug. We are equally satisfied that the story told by the principal witnesses from the tug as to the lights seen on the schooner and their bearing from the tug before collision was false, and intentionally so, and it might be that, were the claimant the moving party, we should feel constrained to hold that he had failed to show fault on the part of his adversary by sufficient credible proof to warrant a finding in his favor. Certainly, the libelant has failed to produce sufficient proof to warrant a finding in his favor. Under these circumstances it would seem sufficient to say that the case must rest where it is left when the

party who has undertaken to prove some fault in navigation has failed to do so by credible evidence. 'We may say, however, that from all the evidence, fortified by the inherent probabilities of the case, we are satisfied that the tug and tow, at the time the vessels sighted each other, had the Stepping Stones and Fort Schuyler lights in range. That being so, both vessels were to the eastward of the courses on which libelant puts them; and as we are further satisfied that they sighted each other end on, or nearly so, it is extremely difficult to see how the collision could have happened as the libelant contends, even if his evidence as to the subsequent movements of both vessels were more satisfactory than it is.

The decree of the district court is affirmed, with costs.