## THE ROBERT HOLLAND and PARANA.

### POPPE et al. v. BIGELOW.

(District Court, E. D. Wisconsin. November 27, 1893.)

1. COLLISION—SAIL—STEAMER AND TOW—DUTY OF STEAMER.
   A steamer with a long and unwieldy tow is bound to take especial care to keep out of the way of an approaching sail; and if, being on the open lake, she allows herself to come into dangerous proximity, and then miscalculates the course of the sail, and is too late in her maneuver, she must be held in fault.

2. SAME—TORCH—IMMATERIAL OMISSION.
   The failure of a sailing vessel meeting a steamer to show a torch, as required by Rev. St. § 4234, is immaterial, when the night is clear, and her ordinary lights are distinctly seen from the steamer.

3. SAME—ERROR IN EXTREMIS.
   A wrong maneuver by a sailing vessel at a time of peril and confusion brought about by the unwarrantably near approach of a steamer and tow will be regarded as an error in extremis.

In Admiralty. Libel by Albert Poppe and others against Anson A. Bigelow to recover damages for a collision. Decree for libelants.

Van Dyke & Van Dyke, for libelants.
Charles E. Kremer, for respondent.

SEAMAN, District Judge. On November 1, 1891, at about 5:15 A. M., a collision occurred between the schooner William Aldrich and the barge Parana, in tow of the steamer Robert Holland, (with the barge Stevenson,) at a point on Lake Michigan four to six miles off the west of Wisconsin shore, and five or six miles north of Cana Island light. The Aldrich was a three-masted schooner of 180 tons burden, laden with lumber, bound from Nahama, Mich., to Milwaukee, Wis. She had her three jibs, foresail, and mainsail set, and her mizzen furled, and was on a course of S. by W. ½ W., when sighted. The wind was a good, fresh breeze, from the northwest. The steamer Holland had the barges Stevenson and Parana in tow, in the order named, all light, bound from Chicago to Washburn, Lake Superior, via straits of Mackinac. Their course, when the schooner was sighted, (erroneously stated by the answer as N. E.,) was N. N. E., according to the undisputed testimony. The Stevenson carried a foresail and staysail, and the Parana a foresail. This libel was filed by the owners of the schooner against the owner of the Holland and the Parana, upon claim that the collision happened solely from fault of the towing steamer, through violation of rule 20 of navigation regulations, in failing to keep out of the way of the sailing vessel, and especially in an alleged change of course to cross the bows of the schooner. The respondent denies all fault on the part of the steamer, and alleges fault of the schooner in the following particulars: (1) That she exhibited no torchlight to the steamer; (2) that she kept no proper lookout; (3) that she did not keep her course.

Although there are many contradictions in the testimony with the advantage as to numbers in favor of the respondent, the undisputed evidence shows that it was a clear, dark morning, and the lights

of each approaching vessel were distinctly seen and reported by each lookout. The lookout of the steamer reported a green light about a point on the starboard bow. He places it a mile or a mile and a quarter away. The mate says, "It was three or four miles away—oh, no, two or three miles away—when I saw it." From the schooner the lookout observed first the "bright light" of the steamer, and at about five miles her red light over his lee bow, which was duly reported. Each claims to have kept his course after these observations until they came into proximity. The witnesses for the respondent state that although the course of the tow was N. N. E., and that of the schooner W. ½ W., there was quite an opening between, so that the course of the tow would lie to the windward or west of the schooner. On the other hand, the red light of the steamer was presented to the schooner, according to all of libelants' testimony, and it was their understanding that the tow intended to pass them to leeward. I think the diagrams produced at the hearing in behalf of the respondent, as well as those for the libelants, tend strongly to support the latter view,—that the course of the tow appeared pointed to the eastward of the schooner. Under the conceded facts of the collision, the only theory advanced by the respondent to avoid this conclusion is that the course of the schooner must have gradually veered to the westward, into the wind. There is no testimony to this effect, but the observations of the schooner's green light, as reported by the steamer's lookout, rather show a steady course, and such is the affirmative evidence for libelants. On the part of the steamer, the witnesses assert that her course was unchanged until nearly approaching the schooner, when the steamer's wheel was put a-starboard, changing her course to the westward about a point and a half. The distance between the approaching vessels at this time is variously stated by respondent's witnesses from twice the length of the tow to 100 feet. They also assert that when they passed the schooner was some five or six hundred feet to the leeward of the steamer, and that the schooner suddenly came up into the wind, and drove into the tow, passing the Stevenson, but striking the towline between that and the Parana, and thence onto the latter. The length of the Holland and tow is shown to have extended out about 1,800 feet. As to speed, the utmost of claim upon the part of the steamer is that each was about equal, and 7 miles an hour; but the preponderance of testimony indicates that the tow was somewhat faster, and the combined speed of approach about 15 miles an hour. There is no pretense that effort was made, or thought given, to check the speed of the steamer. They were upon the open lake, with ample sea room; and it was her place, under the navigation rules, to keep away from the legitimate course of the schooner. Her long and unwieldy tow—regarded by the law as one vessel, and that a steamer—required especial care to keep clear. The Civilta, 103 U. S. 699; The Favorite, 10 Biss. 539-541, 9 Fed. 709; New York & B. Transp. Co. v. Philadelphia & S. Steam Nav. Co., 22 How. 461. It was incumbent upon her to so navigate as to avoid dangerous proximity, tending to alarm and confusion. The Falcon, 19 Wall. 75; The Carroll, 8 Wall. 302. The tow was drifting to leeward, making a passage to the windward more diffi-

cult. I am forced to the conclusion that those in charge of the steamer must have miscalculated the course of the schooner, and were too late with their maneuver to windward, whatever its extent, to avoid catastrophe; hence, that they were negligent, under all the circumstances shown. The facts here are clearly distinguished from those appearing in The Wioma, 5 C. C. A. 122, 55 Fed. 338, and other cases cited for respondent.

Relative to the faults charged against the schooner, I find as follows:

1. It is undisputed that the schooner exhibited no torchlight, and this is claimed to be in violation of a regulation appearing as section 4234, Rev. St. In view of the decision in U. S. v. Rodgers, (Nov. 20, 1893,) 14 Sup. Ct. 109, handed down by the supreme court since this hearing, holding that the term "high seas" applies to the open waters of the Great Lakes, and inferentially and logically to Lake Michigan, I am of opinion that section 4234 must be taken as modified by the act of March 3, 1885, which prescribes rules for navigation of all vessels "upon the high seas and in all coast waters," and, by section 2, repeals all other regulations for such navigation. But whether in force or not seems to be immaterial, upon the undisputed facts here. The lights of the schooner were burning, and distinctly seen, and it is not apparent how observations could have been helped by a torch. The morning was clear, and there were no conditions to obscure the lights, and the absence of a torch was immaterial. The Pennland, 23 Fed. 556; The Margaret, 3 Fed. 870.

2. The alleged want of a proper lookout on the schooner is contrary to the testimony. The lights appear to have been observed and duly reported by him, and I do not think the testimony warrants the inference argued by counsel for respondent, that he then paid no further heed to the light until the reported change of course by the steamer.

3. The only proof as to any change in the course of the schooner relates to a situation after she had passed the steamer, when it is alleged by the witnesses for respondent that she swung up into the wind, and thus drove onto the towlines and into the barge. This view is corroborated by the fact that the schooner was struck by the barge on her port bow at the cathead. At this moment there was peril and confusion, and it is not surprising that the testimony is conflicting. The wheelsman of the schooner says that he put the wheel hard to port when collision was inevitable, to save the blow as much as possible. He may be mistaken, and, in panic, may have put the wheel the other way, or it may be, as suggested in respondent's brief, that because of the condition of her centerboard, or other cause, the schooner did not mind her helm. In either view, this occurred in such proximity and such situation of imminent danger, produced by the wrong maneuvers of the steamer, that it must be regarded in extremis, and not taken as a fault to defeat recovery. The Maggie J. Smith, 123 U. S. 355, 8 Sup. Ct. 159; The Elizabeth Jones, 112 U. S. 514, 5 Sup. Ct. 468; Bentley v. Coyne, 4 Wall. 512; The Chatham, 3 C. C. A. 161, 52 Fed. 396.

Decree will be entered in favor of the libelants, and reference to ascertain and report the damages.