## THE GEORGE L. GARLICK.

## THE STUYVESANT.

### (District Court, E. D. New York. June 20, 1898.)

1. COLLISION—STEAMER AND SAIL.

Courts view with some suspicion the exculpatory allegation of a steamer that a sailing vessel changed her course, and a claim by a tug that a gust of wind came with such nice punctuality as to make an involuntary change of eight points in the course of a schooner, and carry her, against her navigator's intention, into a passing barge, which should have kept out of her way, is an improbable coincidence, not to be adopted when not supported by a preponderance of the evidence.

2. SAME.

It being the duty of a steamer to keep out of the way of a sailing vessel, she cannot exculpate herself, in case of a collision, by the plea that the fault alleged against her indicates negligence so gross as to be improbable, unless her own explanation of the cause of the accident is probable, and such probability is established by the preponderance of the evidence.

This was a libel in rem by Felix Clancy and Ann Brophy against the steam tug George L. Garlick and the barge Stuyvesant to recover damages resulting from a collision.

Alexander & Ash, for libelants.

Carpenter & Park and R. D. Benedict, for the George L. Garlick.

THOMAS, District Judge. The course of the Hudson river at the point of the collision involved in this action is N. N. E. and S. S. W. The wind was nearly N. W. The schooner Washburn was sailing nearly straight down the river, under a jib and two-reef mainsail. Going up the river to the westward of the schooner was the tug Niagara, with a long fleet of canal boats. While the schooner was passing the tow, the tug Garlick, towing by a hawser the barge Stuyvesant, bound up the river, passed the schooner's bow, and the following barge struck the schooner on the latter's port side, whereby both vessels were carried around to the westward, and collided with the Niagara's tow, whereupon the schooner sank; hence the claim for damages in this action. The schooner and the Garlick were both east of the Niagara's tow, but each claims to have been the nearer to the said tow, and to have been proceeding on a course about parallel with it, and each claims that the other suddenly changed her course to the westward, and caused the collision. It was the duty of the Garlick to avoid the schooner, whether she was to eastward or westward of her. If the Garlick, being to the eastward, crossed the schooner's bow, the former was negligent; if the schooner was on the starboard hand of the Garlick, the latter was still the more bound to keep out of her way. But the Garlick, in exculpation, claims that while she was going northerly on a course laid between the Niagara's tow and the Washburn, the latter suddenly went partially about, and began sailing to the westward, and that this was caused by a sudden gust of wind, as the night had been tempestuous, and the wind continued strong and fitful. The exemption of the Garlick

from liability depends upon the acceptance of this explanation, for the rules of the road operate against her.

In considering this question it must be remembered that the burden of proving herself free from fault is with the steam vessel. It does not seem to the court that she has discharged this burden. Courts view with some suspicion the exculpatory allegation of a steamer that a sailing vessel changed her course; and the claim that a gust of wind came with such nice punctuality as to make an involuntary change of eight points in the schooner's course, and carry her, against her navigator's intention, into a passing barge, which should have been kept out of the schooner's way, seems an improbable coincidence. To this it may be answered with considerable reason that it is alike incredible that the Garlick should have shifted her course from one of a general northerly direction to the westward, sharply across the schooner's bow, and directly towards the Niagara's tow. It is probable that the Garlick did not cross so definitely to the west as the evidence of some of the schooner's witnesses would indicate; but, in any case, the law places the steamer in the wrong, and she cannot exculpate herself by the plea that the fault alleged against her indicates negligence so gross as to be improbable, unless her own explanation of the cause of the accident is probable, and such probability is established by the preponderance of evidence. The captain of the schooner, the lookout, and three others of her crew, and the captain and pilot of the Komuk, a tug aiding the Niagara's tow, and the captain of the Niagara, give evidence tending to support the schooner's and condemn the Garlick's contention. The evidence of these witnesses is not harmonious, and their statements, in some important details, are not free from discrepancies and improbabilities. But opposed to them is the evidence of the captain, deckhand, and engineer of the Garlick, and Nelson, the captain of the barge Stuyvesant, and Terrell, the captain of a canal boat in the Niagara's tow. These witnesses, in appearance, intelligence, recollection, accuracy of observation, and manifestations of integrity, were not superior to the witnesses of the libelants, and did not carry conviction to the mind of the court. This is by no means a case of perfection of proof on one side and total deficiency on the other. Taken one by one, the libelants' witnesses escape, with greatly diminished credit, from the criticisms of the claimant's advocate; but their collective evidence, in quality and quantity, considered in connection with the rules of navigation, is preferred by the court. When events are entangled in the confusion that results from unintelligent and inaccurate observation and perverse and careless statements, no conclusion, at all points logically defensible, can be attained, and an element of doubt accompanies and survives the decision. Such seems to be the persistent condition of actions involving collisions between vessels. Hence the court must consider and weigh the evidence and probabilities, and strike such balance as his judgment and the rules of law require. Let a decree be entered in favor of the libelants for the damages that shall be ascertained to have been suffered by the schooner on account of the collision, with costs.