THE ISAAC H. TILLYER.

THE DUDLEY PRAY.

FRENCH v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO. et al.

(District Court, D. New Jersey. April 23, 1900.)

1. COLLISION—STEAM AND SAIL VESSELS MEETING—DUTY OF TUG WITH TOW.
    It is the duty of a tug with a tow, on meeting a sailing vessel, to take all necessary precautions to keep both tug and tow out of her way, and where, by reason of its length, the tow is unwieldy, the care required is correspondingly greater.

2. SAME—DUTY OF SAILING VESSEL.
    A sailing vessel, on meeting a tug with a tow, is bound to keep her course, that the tug may not be misled in taking measures to avoid collision.

3. SAME—FAULT—FACTS CONSIDERED.
    A schooner came in collision with the second of three barges in tow of a tug on a single line, the whole extending a length of 3,300 feet. The vessels met on nearly parallel courses, and came within sight of each other when two miles apart. The schooner was sailing closehauled, and the tug passed to the leeward of her at a distance of about 300 feet. The schooner held her course, but, owing to her leeway, passed the first barge at a distance of not more than 75 feet, and came in collision with the second. Held, that the schooner was not in fault for holding her course, but that the tug and the barge were both in fault for the collision,—the former for not changing her course so as to pass with her tow to the windward of the schooner, which she could readily have done; and the latter because, when the schooner passed so close to the first barge, which was 160 fathoms in front, she must have known, if she kept a proper lookout, that the tug had placed her in a position where collision was inevitable, if she kept her course, and should have cut her hawser, and by using her helm sheered out of danger.

4. SAME—WEIGHT OF EVIDENCE.
    Testimony from a steamer, clearly in fault for a collision with a sailing vessel, that the latter was guilty of contributing fault by changing her course, will be viewed with suspicion; and when the evidence from the sailing vessel is to the contrary, and accords with the probabilities, it will be accepted in preference.

In Admiralty. Libels and cross libel for collision.

Stewart & Macklin and Frank B. Colton, for libelants.
Curtis Tilton, for claimant the Isaac H. Tillyer.
Carpenter & Park, for claimant the Dudley Pray.

KIRKPATRICK, District Judge. It appears from the evidence in these causes that on the 10th of April, 1895, at about half past 10 o'clock at night, a collision occurred between the schooner Isaac H. Tillyer, bound from Boston to Philadelphia, and the coal-laden barge Oneonta, in tow of the steam tug Dudley Pray, bound from

New York to Boston, about midway between the Pollock Rip and Shovelful lights. When the schooner rounded the Pollock Rip light the wind was ahead. In order to make the Shovelful lightship, and clear the shoals, she was closehauled on the starboard tack, and her course set W. by N. $\frac{1}{2}$ N. She had not proceeded far when she sighted, about two miles away, the lights of the tug Dudley Pray and her tow, which consisted of three barges, Alice, Oneonta, and Binghampton, in the order named; all of which were laden with coal. The total length of the tow, including the length of the tug and barges, was about 3,300 feet, the hawser between each vessel being about 150 fathoms in length. The lights on the schooner as well as on the tug and barges were lighted, and the collision is not attributable to the failure of any of the vessels to see the lights of the other. At the time the tug and tow sighted the schooner, their course was E. S. E., or about parallel with that of the schooner, and it is not claimed that either the schooner, or the tug, or any of the barges changed their course from the time they sighted each other until after the tug had passed the schooner. The distance between the tug and schooner in passing is stated in the tug's answer to be 300 feet, and this is the distance fixed by Risley, the mate of the schooner. All of the witnesses say that the schooner and the barges still held their respective courses, so that, as the schooner passed the barge Alice, which was about 150 fathoms astern of the tug, as has been stated, the distance between the schooner and the barge was, at the highest estimate, 75 feet, while others say but 25 or 50 feet. As the barge and schooner approached each other upon their respective courses, the schooner had drifted to leeward about 150 or 175 feet. With the barge Oneonta, which was about 160 fathoms astern of the barge Alice, the schooner collided about head on, according to the testimony, whereby the barge was sunk and the schooner injured.

A libel has been filed on behalf of the owners of the barge Oneonta, claiming damages from the schooner and the tug. A cross libel has been filed on behalf of the schooner, claiming damages from the barge Oneonta, and a libel on behalf of the schooner against the tug. Both the barge and the schooner charge that the tug Dudley Pray was in fault, that she was negligent in the manner of making up and navigating the tow, that the tow was too long, the barges too far separated, and that, considering the length of the tow and the direction of the wind, she did not give the schooner a sufficiently wide berth to enable her to pass without colliding with the tow. The obvious duty of the tug, under the circumstances as detailed, upon sighting the schooner, was to take the necessary precautions to get out of her way, not only with the tug, but with the tow. Her duty in this regard was not changed by reason of her having a tow in charge. The Maverick, 28 C. C. A. 562, 84 Fed. 906. In order that the captain of the tug might not be misled, the schooner was bound to hold her course. The Marguerite (D. C.) 87 Fed. 955. The captain of the tug should have considered the length of his tow, and the increased hazard occasioned thereby. As was said in The John H. May (D. C.) 52 Fed. 884, "the tow, by reason of its length, was dangerous and unwieldy"; and he was

bound to the "extremest care" in its management. The Gladiator, 25 C. C. A. 32, 79 Fed. 445. The evidence shows that there was plenty of water for the tug and her tow to the southward, that the schooner was sighted in time for the tug to avail herself of it, and that the failure of the tug to change her course and go further to the southward was the primary cause of the collision, for which the tug was at fault, and on which she must be held answerable. Was the barge Oneonta at fault? If she had had a proper look-out (and, if she had not, she is in fault), the perilous position in which she was placed by the action of her own tug (which itself passed the schooner but 300 feet away) must have been apparent to her. In fact the libel filed in behalf of the barge owners alleges this fault of the tug. She must have seen that the schooner was drifting to leeward, so that she cleared the barge Alice by about only 75 feet. At the time the schooner passed the Alice, she was still 160 fathoms distant from the Oneonta. Collision was inevitable if the barge held her course. Change was possible. She might have cut her hawser, put her helm to port, and sheered out of danger. By her own account, she did nothing. By the exercise of proper care, she could, notwithstanding the fault of the tug in crowding the schooner, have avoided the collision. The Oneonta should be condemned. Was the schooner in fault? That the schooner, as was her right and duty, held her course from the time she was sighted by the Oneonta until she passed the barge Alice, is asserted by the crew of the schooner, and not denied, but admitted, by all the parties to this controversy. The barge Alice was, at the time she was abreast of the schooner, but 75 feet distant. The Oneonta was about 160 fathoms astern of the Alice. There was no hope for the schooner to avoid a collision with the Oneonta except to continue to hold her course. This the captain and all her crew say she did. There was no change of the helm until, being in extremis, and almost immediately before the ships struck, it was put up to ease the force of the blow. A change made at such a time and under such circumstances, not tending to cause the accident, was immaterial. The Robert Holland (D. C.) 59 Fed. 200. The people of the tug and barge deny these statements. They say that as soon as the schooner passed the barge Alice she put her helm to starboard, and tried to cross the towline connecting the Alice and Oneonta; that, failing in this, she slid along the line, and that the collision was the consequence. In considering this contradictory evidence, I am satisfied with the truth of the statement made by the captain and crew of the schooner. The reasons given by them for their conduct seem reasonable, and cause this testimony to far outweigh the assertions of witnesses for the tug and tow. "Courts view with suspicion the allegations of a steamer that a sailing vessel changed her course." The George L. Garlich (D. C.) 88 Fed. 554. "It is," say the supreme court, "the stereotyped excuse made by a steam vessel to justify a careless collision, and is always improbable, and generally false." Haney v. Steam Packet Co., 23 How. 291, 16 L. Ed. 563. The schooner, under the circumstances, was justified in holding her course, and must be held blameless. Let a decree be prepared in accordance with these views.