---

### THE J. C. AMES.

#### (District Court, E. D. Wisconsin. March 26, 1903.)

1. COLLISION—STEAMER AND SAILING VESSEL—FAILURE TO MAINTAIN LOOKOUT.

As a steamer, with a tow, was approaching the east draw of a bridge from the north, in the nighttime, she saw both lights of the schooner Wyman heading for the same draw from the south, each vessel being about half a mile distant from the bridge. The steamer gave a signal of one blast, and headed for the west draw, but on coming nearer saw the lights of another steamer, which was approaching from the south, headed for that draw. Supposing it to be the Wyman, and that she had changed her course, the steamer gave a two-blast signal, and changed her course for the east draw, where she came in collision with the Wyman. No lookout was stationed on the steamer, but that duty rested on the officer serving as navigator. Held, in the absence of evidence showing contributory fault on the part of the Wyman, that the steamer was in fault for the collision, the facts being insufficient to exonerate her on the ground of inevitable accident.

2. SAME—CONTRIBUTORY FAULT—FAILURE OF SCHOONER TO SHOW TORCH.

The failure of a schooner navigating on the Great Lakes to show a torch to a steamer approaching in the nighttime, as required by rule 12 of the navigation rules (28 Stat. 645 [U. S. Comp. St. 1901, p. 2889]), is not a fault contributing to a collision with the steamer, where she was seen by the steamer and signaled when a mile distant, and thereafter kept her course, and the omission did not in any way tend to mislead or confuse the steamer.

In Admiralty. On libel filed by the owners of the schooner Charles E. Wyman for damages by collision.

¶ 2. Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.

The collision occurred in the east draw of the railroad bridge which spans Sturgeon Bay at the city of Sturgeon Bay, about 1:30 a. m., on a clear night, with all lights displayed. The Wyman was a three-mast schooner, and approached the bridge from the south, with the wind fair on her port quarter, and all sails set, except square sail and lower topsail. The steamer, 176 feet in length, had in tow a car ferry, 309 feet long and 44 feet beam, carrying 26 loaded cars, and approached from the north. When about one half mile from the bridge the master of the steamer says: "I saw his [the schooner's] red and green lights both looking right at me," and "coming through the east draw." The steamer blew a passing signal of one blast, indicating that the steamer would go to starboard and take the west draw, and so proceeded at moderate speed after clearing some shoals on her starboard hand. On opening up the west draw the steamer was confronted by both side lights of a schooner making for that draw, and the master supposed that the Wyman had thus changed her course. In that belief he gave a two-blast signal, indicating that the steamer would clear the way and take the east draw instead. This was attempted, resulting in tearing away the steamer's tow port and in collision with the schooner Wyman in the east draw. The testimony is not all concurrent as to the actual course of the Wyman in approaching the east draw, but it is manifest from the testimony as a whole that the light sighted from the steamer in the west draw was that of another schooner, the Jennie Weaver, which was closely following the Wyman on her port quarter. The Weaver proceeded so that the west draw was opened up and the lights of the steamer were sighted; then came about and dropped anchor in the bay, to avoid collision.

C. E. Kremer, for claimant.
M. C. Krause, for libelants.

SEAMAN, District Judge (after stating the facts). This libel is exceptional in collision cases for the absence of conflict in the testimony upon the substantial facts. No dispute arises that the course of the schooner was well directed for the east draw when observed from the steamer, nor that the steamer's course was duly taken thereupon for the west draw; and the testimony of the master of the steamer is notably clear and convincing that the steamer and tow were properly navigated through a difficult passage in that view. When minor differences in the testimony are explained, I am satisfied that the only issue involved is one of law—whether liability must be presumed from the facts thus established.

The approach of the schooner and her course were observed from the steamer in ample time to govern the course of the latter. Both masters and the men on steamer and ferry concur in placing the red and green lights of the schooner pointing for the east draw, and in their sight until closed out by the move of the steamer to starboard and by the bridge. While the two bridge tenders unite in the view that the schooner Wyman was heading for the west draw when close to the bridge, and suddenly came over to starboard into the east draw —and thus into collision when the steamer was driven to change her course from the west to the east draw—the testimony on the whole is convincing that they were mistaken, confusing the lights of the schooner Weaver with those of the Wyman. On behalf of the steamer fault is charged against the schooner (1) that she failed to show a torch; (2) failed to answer the steamer's passing signal of one blast; and (3) failed to keep her course after sighting the steamer. These

contentions, however, are without force, respectively, for the following reasons:

1. While it is true that no torch was shown, it is manifest that a torch could have served no useful purpose, and its absence in no sense contributed to the collision, as the approach and course of the schooner were both observed and recognized on the part of the steamer.

2. Response by a schooner to the passing signal of a steamer is not mentioned in the navigation rules, and the effort to prove a general custom to that effect in the waters of Sturgeon Bay and Canal was unsuccessful. Whether such requirement may not justly be implied is immaterial to the present controversy, because the master and men of the schooner testify that the passing signal was so answered by the schooner's patent foghorn, and their direct and credible testimony cannot be set aside by that on the part of the steamer that no response was heard.

3. The third contention rests upon the testimony on the part of the schooner that on coming around the bend, over half a mile south of the bridge, the masthead light of the steamer was observed approaching the open draw from the north, and, hearing what was supposed to be a two-blast passing signal from the steamer, the schooner was hauled up about half a point for the west draw. It appears, however, from the testimony on the part of the steamer, that no such signal was given therefrom; also that no such maneuver of the schooner for the west draw was observed. On the contrary, when first sighted from the steamer the red and green lights of the schooner were distinctly presented through the east draw. Thereupon the one-blast signal was given by the steamer, indicating that she would take the west draw, and the testimony concurs in showing that this was understood and obeyed by the schooner, then half a mile south of the bridge, and that her course was well pointed for the east draw. If her course was thus changed in response to the signal, which plainly indicated the starboard course of the steamer, it was not a fault, within the meaning of the rule; and surely such compliance is not open to complaint on behalf of the steamer.

I am of opinion that the navigation of the schooner Wyman was without fault, unless failure to show a torch violated rule 12 of the act of 1895 (28 Stat. 645, 3 U. S. Comp. St. 1901, p. 2889). Whether the rule intends and applies to the case in question is not material to this inquiry, as it is undisputed that the omission neither confused nor tended to confuse the course of the steamer; that its use would have furnished no aid, and its absence in no wise contributed to the collision. The Robert Holland and Parana (D. C.) 59 Fed. 200, 202, and cases cited. The course of the schooner for the east draw was unmistakably recognized by the steamer when each was a half mile from the bridge, and the proof is convincing that the schooner kept that course consistently, and that the collision in that draw was wholly due to the mistake on the part of the steamer in reversing out of the west draw on the supposition that the schooner had changed her course thereto—a mistake which cannot relieve from responsibility to the libelants, however excusable from the momentary view point of the

navigator of the steamer. The schooner Wyman was on her course through the east draw, entirely within her rights. The burden rested on the steamer to keep off that course, and as held in The Nacoochee, 137 U. S. 330, 338, 11 Sup. Ct. 122, 34 L. Ed. 687, the steamer "must be held wholly responsible, unless she shows a fault on the part of the schooner which contributed to the collision, or that it was due to unavoidable accident." In other words, as stated by Judge Brown in The City of Truro (D. C.) 35 Fed. 317, 318: "When, upon the whole case, there is no decisive evidence of fault on the part of a sailing vessel, the steamer must answer for the collision, where no circumstances appear to show that the accident was inevitable." While the course of the schooner Weaver, following up the Wyman, with her lights confronting the steamer on the approach to the west draw, is quite inexplicable, it is equally inexplicable that her lights should not have been discovered at some stage by a lookout properly stationed on the steamer. The framework of the bridge, and the position of the Wyman, may have obstructed the view to some extent, but it is not apparent that a constant lookout would not have found her lights in time to avoid the danger. No lookout was provided or stationed on the steamer, but that duty rested upon the officer serving as navigator —in this instance, the master. The doctrine is well settled that the lookout required by the rules must be not only competent, but charged with no other duty while so serving, and that the officer navigating the steamer cannot at the same time serve as lookout. The Ottawa, 3 Wall. 268, 272, 273, 18 L. Ed. 165; 6 Rose's Notes U. S. Rep. 498; The Hypodame, 6 Wall, 216, 224, 18 L. Ed. 794. See, also, The Propeller Genesee Chief, 12 How. 443, 463, 13 L. Ed. 1058; The Colorado, 91 U. S. 692, 699, 23 L. Ed. 379. This master was well stationed on the bridge of his steamer, but was necessarily attending to the navigation of steamer and ferry by the shoals and to the west draw—much more difficult than the east draw, which was their customary passage. The fact that no fault appears in his navigation, aside from the want of a lookout, and that his course in reversing seemed the only one open when confronted by the lights of the Weaver, does not establish a case of inevitable accident, and the presumption which then arises against the steamer and in favor of the injured schooner is not rebutted.

The libel must be sustained, therefore, and decree will be entered accordingly, with reference to ascertain the damages.